Carlos Ramón Pérez et al., demandantes y recurrentes, *v.*
Adrián Pérez Agudo et al., demandados y recurridos.

*Número:* R-73-172    *Resuelto:* 14 de noviembre de 1974

*Armando Chaar Padín* y *Salim Chaar Padín,* abogados de los recurrentes; *Francisco Ponsa Feliú, Francisco Ponsa Flores, Wilson F. Colberg* y *Jorge Ramírez de Arellano, Jr.,* abogados de los recurridos.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

■ La facultad de mejorar concedida al testador es potestad para ser justo o injusto, para amparar la invalidez, fortalecer económicamente el porvenir de algún descendiente, premiar su ayuda en el fomento del caudal y hasta hacer ajuste de cuentas, o simplemente mostrar la preferencia efectiva del disponente. En todo caso si bien su motivación no se cuestiona, la mejora es excepción a la igualdad en la distribución de la herencia, divisa rectora del Código Civil y en ocasiones esta potestad de mejorar refluye en licencia para discriminar, bendiciendo a unos y castigando a otros. De esta dualidad potencial de nobleza y mezquindad nace la exigencia de los Arts. 752 y 755 del Código Civil (31 L.P.R.A. secs. 2392 y 2395) de que esa voluntad de mejorar se declare de manera expresa.

■ Como fuente de discrimen califican la mejora los comentaristas. "La mejora a un descendiente perjudica a los demás coherederos legitimarios en cuanto les arrebata una fracción de la parte forzosa. Introduce la desigualdad, donde la ley quiere la igualdad; ésta es la regla general, aquélla la excepción; la última debe constar categóricamente, porque la excepción (sobre todo si constituye un privilegio) no se presume. Este criterio es justísimo: si no dice nada el testador de mejora, ¿por qué ha de considerarse existente en detrimento del derecho de los otros descendientes suyos? Para quebrantar, para destruir un derecho de tanta fuerza como el de legítima, es menester una declaración expresa; nunca puede ser suficiente una presunción de voluntad." Scaevola, *Código Civil*, To. 14, pág. 576, ed 1944. Manresa, en su comentario al Art. 828 del Código Civil Español, equivalente al 755 nuestro, dice: "El principio no puede ser más justo. La persona que quiera hacer una mejora debe manifestarlo expresamente. No siendo así, la ley presume con razón que no fue su ánimo mejorar, ya que la mejora, como excepcional, no debe presumirse, . . . ." Manresa, *Comentarios al Código Civil Español*, To. 6, Vol. 1, pág. 814, ed. 1973.

La mejora es una abstracción, opción crítica que se concreta por la determinación del causante. Tiene resuelto el Tribunal Supremo de España que el nacimiento de la mejora "depende exclusivamente de la potestad concedida al testador para crearla, y que por tanto, si no usa de ella por acto expreso, ya que aparte de las excepciones comprendidas en los arts. 828 y 782 del citado Código, éste no admite mejoras tácitas, no surge tal institución a la vida del Derecho, y en consecuencia, queda con su prístino carácter de legítima, en la acepción lata ya estudiada, toda aquella parte de la herencia constitutiva de los dos tercios del caudal, reservada por la ley a los herederos forzosos; contrariamente a lo que acaece cuando el *de cujus* dispone a favor de éstos o de alguno de ellos, del todo o parte de ese tercio electivo, porque entonces al ser distraído de la legítima de que forma parte para vivir vida propia y específica, su naturaleza especial que para el caso establece el Código Civil, y cuando ello ocurre, no cabe duda que los derechos pertenecientes a este tercio son adquiridos por el heredero o herederos en virtud de decisión del testador y, por ende, en concepto de herederos voluntarios, a diferencia de lo que sucede si dicha mejora no tiene existencia real y concreta, es decir, independiente de la legítima, ya que en este supuesto, no puede decirse que exista como tal, jurídicamente, y en su virtud nada puede obtenerse por consideración a la misma, ni hablarse de hijos y descendientes mejorados." Jurisprudencia Civil, sentencia Núm. 134, To. 139, pág. 684, según citada por Puig Brutau en *Fundamentos de Derecho Civil*, To. 5, Vol. 3, pág. 50, ed. 1964.

El testador en el caso que nos ocupa procreó ocho hijos, dos de matrimonio y seis naturales. Al testar dispuso:

"Cuarto: Que nombra a sus dos hijos legítimos Carmen y Andrián Pérez Agudo herederos por partes iguales en todo cuanto el compareciente pueda disponer, de acuerdo con la ley al efecto; y deja a sus seis hijos reconocidos, y en partes iguales, la

cuota a la cual tales hijos tienen derecho por ministerio de la ley."

■ Constituyen la legítima de los hijos y descendientes legítimos, (¹) dice el Art. 737 del Código Civil (31 L.P.R.A. sec. 2363), las dos terceras partes del haber hereditario del padre y de la madre. El Código Civil en su aspiración a la igualdad en la distribución de la herencia reserva dos tercios de ésta como legítima de los hijos. Concede, sin embargo, una autonomía o libertad al testador para alterar ese orden igualitario y romper el bloque de los dos tercios si hace uso de la facultad de mejorar. Para ello el Código exige que haya una disposición expresa (Arts. 752 y 755, citados) que si bien no requiere determinado formulismo ni voces sacramentales ha de ser lo suficientemente clara para surgir como afirmación de voluntad en escrito o acto que dirija la inteligencia hacia la percepción de ese propósito a primera mano, sin mayor esfuerzo de imaginación.

La interpretación judicial podrá ir en auxilio de esa voluntad de mejorar mas no al extremo de adivinarla y escogerla de entre supuestos coexistentes. ". . . de todas maneras la palabra 'expresa', que establece nuestra Ley, puede ser entendida en el sentido de que quede *bien clara la voluntad del causante,* aun cuando éste no manifieste de una manera formal su intención de mejorar, y siempre que no aparezca la posibilidad de un sentido equívoco." (Énfasis del autor Puig Peña, *Compendio de Derecho Civil Español,* To. 4, pág. 1479, ed. 1966.) Y Roca Sastre añade: ". . . Lo que exige el Código Civil es que la voluntad de mejorar, aunque no se use la pala-

---

(¹) Todos los hijos tienen, respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos. Art. 1, Ley Núm. 17 de 20 de agosto de 1952, conocida como Ley para Establecer la Igualdad de Derechos de los Hijos (31 L.P.R.A. sec. 441); Art. II, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico (Carta de Derechos); *Ocasio* v. *Díaz,* 88 D.P.R. 676 (1963), resuelve que el derecho hereditario de todos los hijos, sin excepción alguna, se determinará por la ley aplicable y vigente a la fecha del fallecimiento del causante. El testador falleció el 16 de febrero de 1970.

bra 'mejora', aparezca claramente. Lo esencial es que no quepa duda acerca de que el causante quiso o tuvo voluntad de mejorar." Enneccerus-Kipp-Wolff, *Tratado de Derecho Civil*, To. 5, Vol. II, pág. 359, ed. 1951.

El testamento que nos concierne es uno abierto, otorgado ante un notario público quien de tener la encomienda del testador de mejorar a alguno de sus hijos pudo haberla expresado en lenguaje sencillo [2] y directo preferiblemente el que más se acercaba al habla del disponente, un natural de Puerto Rico hijo de catalán. Por el contrario, el testador recurrió a un léxico legalista y produjo dos disposiciones contradictorias e irreconciliables: asignó a los legítimos "todo cuanto el compareciente pueda disponer de acuerdo con la ley", y a los reconocidos "la cuota a la cual tales hijos tienen derecho por ministerio de ley." Ya hemos visto que "la cuota" de los naturales se adentra en la legítima completa de dos tercios de la herencia. Art. 737 del Código Civil, *supra*. ¿Sabía el testador cuál era "la ley" al testar, y cuál sería la que gobernaría la repartición de sus bienes al sobrevenir su muerte? La madeja de interminables conjeturas hace de todo punto imposible percibir la excepción desigual de la mejora y conduce a la integridad de los dos tercios de legítima intocada por falta de un claro ejercicio de la potestad de mejorar.

■ La redacción legalista de la referida cláusula no contiene suficiente afirmación de mejorar, de romper por elección del testador el bloque de la llamada legítima larga. [3] Nos remite a la Ley, que en el desarrollo del derecho civil común

---

[2] La sencillez en el lenguaje culto además de propiciar la elegancia en el decir cumple el fin primordial de trasmitir la idea, y resulta inapreciable instrumento en la redacción del testamento y en toda la práctica notarial.

[3] En nada despeja el equívoco la evidencia extrínseca ofrecida por los recurridos al amparo de los Arts. 23 y 28 de la Ley de Evidencia (32 L.P.R.A. secs. 1666 y 1671) que por su fragilidad no ganó acceso a las determinaciones factuales del tribunal de instancia.

y en toda la anchura de nuestro ordenamiento legal repudia el discrimen y la desigualdad.

Por no tener el tercio de libre disposición la característica de porción comprometida por ley para los legitimarios, puede leerse la cláusula como dejando ese tercio libre a los hijos legítimos llamados Carmen y Adrián. Art. 737 del Código Civil—31 L.P.R.A. sec. 2363.

La ambivalente redacción de la cláusula testamentaria excluye toda intención de mejorar por lo que esta herencia ha de repartirse recibiendo los dos hijos legítimos el tercio de libre disposición, y concurriendo en pie de igualdad con sus seis hermanos naturales en los dos tercios restantes del caudal. Se cumple así la indicación del testador de que la distribución de su herencia se haga "de acuerdo con la ley."

*Se elimina de la sentencia revisada todo reconocimiento de la mejora, debiéndose distribuir la herencia según resuelto en esta opinión, y así modificada, se confirmirá.*